## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**United States of America**

Case No. 10-cr-044-PB-1

     v.

Opinion No. 2021 DNH 088

**Scott D. Farah**

### MEMORANDUM AND ORDER

Defendant Scott Farah moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"), as amended by Section 603(b)(1) of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.  For the following reasons, I deny Farah's motion.

### I.   STANDARD OF REVIEW

Following its amendment by the First Step Act, the compassionate release statute, codified as Section 3582(c)(1)(A), provides that

> the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in . . . [18 U.S.C. §] 3553(a) [("Section 3553(a)")] to the extent that they are applicable . . . .

§ 3582(c)(1)(A).  The court may reduce a defendant's prison sentence if it finds that "extraordinary and compelling reasons

warrant such a reduction," id. § 3582(c)(1)(A)(i), and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A).

The Sentencing Commission's policy statement ("the policy statement"), which was promulgated prior to the passage of the First Step Act, provides as follows:

> Upon motion of the Director of the [BOP] under [Section 3582(c)(1)(A)], the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in [Section 3553(a)], to the extent that they are applicable, the court determines that —
>
> (1)  (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)  The reduction is consistent with this policy statement.

U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 (U.S. Sentencing Comm'n 2018). The commentary to the policy statement further explains what is meant by "extraordinary and compelling reasons." It states, in relevant part, that "[p]rovided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist," USSG § 1B1.13 cmt.

n.1, when "[t]he defendant is . . . suffering from a serious physical or medical condition," id. § 1B1.13 cmt. n.1(A)(ii)(I).

District courts are divided on whether the policy statement remains binding following the enactment of the First Step Act. Cf. United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) (collecting cases). I am not aware of any court that has chosen to disregard the policy statement entirely where the defendant first files their motion with BOP. I conclude, instead, that it "provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change." Id. at *3.

## II.  BACKGROUND

In 2010, Farah pleaded guilty to mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. See Mot. for Compassionate Release, Doc. No. 79 at 1-2. According to the indictment, Farah embezzled approximately $33.5 million over a period of over four years, defrauding scores of victims in one of the biggest Ponzi schemes in New Hampshire history. See Gov't's Obj. to Def.'s Mot. for Release, Doc. No. 80 at 9. His criminal actions harmed not only his victims but also the integrity of New Hampshire's financial, regulatory, and political institutions.

Farah does not have any previous criminal history. See Doc. No. 79 at 2. Due to the seriousness of Farah's crimes, I

sentenced Farah to a term of imprisonment of 180 months.  See
Doc. No. 80 at 1.  He has served approximately 120 months of his
sentence.  See Doc. No. 80 at 1.

Farah is currently incarcerated at Federal Correctional
Institution ("FCI") Loretto, a BOP facility located in Loretto,
Pennsylvania.  See Doc. No. 80 at 1.  The BOP has developed and
implemented a multi-point plan to address the COVID-19 pandemic.
See Doc. No. 80 at 5-6.  Under the plan, the BOP has implemented
quarantine and isolation protocols, screening and sanitization
procedures, daily temperature checks, and mask wearing for staff
and inmates, among other measures.  See Doc. No. 80 at 5-6.
When I held a hearing on Farah's motion on April 9, 2021, there
were fifteen active case of COVID-19 at FCI Loretto.  According
to the BOP's website, as of May 20, there were four active cases
of COVID-19 in the inmate population and zero active cases among
staff at this facility.[1]

Farah is fifty-seven years old and is overweight.  See Doc.
No. 79 at 11, 15.  Citing his deteriorating mental health
related to a previous unsuccessful plan for release, his age and
weight, and the declining health of his aging father, Farah
submitted a request for compassionate release to the BOP, which
was denied on January 11, 2021.  See Doc. No. 80 at 2.  Farah

---

[1] *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/index.jsp
(last visited May 20, 2021).

did not file an administrative appeal.  He then filed this
motion for compassionate release on January 27, 2021, requesting
a reduction in his sentence to allow for his immediate release.
See Doc. No. 80 at 2.

### III. __DISCUSSION__

Farah argues that I should order his release because of his
deteriorating mental health following his anticipated release
last summer that did not materialize through no fault of his,
his medical conditions, and his father's ailing health.  See
Doc. No. 79 at 1.  He also contends that a reduction of his
sentence would not undermine Section 3553(a)'s sentencing
factors.  See Doc. No. 79 at 1.  The government opposes Farah's
motion.  See Doc. No. 80.  Although Farah did not appeal BOP's
denial of his request for a reduction in sentence, the
government agrees that Farah has exhausted his administrative
remedies.  Accordingly, his motion is properly before me under
Section 3582(c)(1)(A).

Farah has not met his burden of demonstrating that
"extraordinary and compelling reasons" exist that would render
him eligible for compassionate release.  See § 3582(c)(1)(A).
Farah first raises the issue of his anticipated release in the
summer of 2020.  See Doc. No. 79 at 5-11.  Farah successfully
applied through BOP for early release due to his medical
condition in April 2020 and formulated a release plan with U.S.

Probation, initially for Virginia where is parents lived at the time.  <u>See</u> Doc. No. 79 at 6-7.  When Virginia denied the transfer, he applied to be released in New Hampshire instead. <u>See</u> Doc. No. 79 at 7.  After being contacted by several of Farah's victims about his proposed early release and discovering his release plan, the United States Attorney's Office for the District of New Hampshire requested that BOP review Farah's release plan.  BOP then determined that Farah was medically ineligible for release because his medical condition did not place him at an increased risk for adverse outcomes from COVID-19.

Farah contends that the mental and emotional toll of his anticipated release and subsequent denial constitute extraordinary or compelling reasons justifying early release. <u>See</u> Doc. No. 79 at 8-9.  While I sympathize with the emotional impact of his approval and subsequent denial for early release, these circumstances do not constitute an extraordinary or compelling reason justifying early release from detention.

Farah next raises his medical condition.  According to the Centers for Disease Control and Prevention ("CDC"), being overweight can make an individual more likely to become severely ill if they contract COVID-19.[2]  At fifty-seven years old, Farah

---

[2]     *People with Certain Medical Conditions*, CDC,

is not in the highest risk category due to his age, but his age
does create additional risk for severe illness.[3]  Although I
accept that Farah's weight may increase his relative risk of
COVID-19-related complications, the condition falls short of
placing him at a risk of harm that would justify his release.
On similar facts, I have found in the past, as have other
district courts, that being overweight on its own does not
justify a finding of an "extraordinary and compelling reason."
See United States v. Peinado-Sotomayor, No. CR-18-01388-01-PHX-
SPL, 2021 WL 1117337, at *1-2 (D. Ariz. Mar. 24, 2021) (finding
no extraordinary or compelling reason where defendant's only
health conditions were being overweight with prior history of
COVID-19); United States v. Cheever, No. 18-10476-NMG, 2021 WL
231277, at *2 (D. Mass. Jan. 21, 2021) (overweight defendant
with sleep apnea, bipolar disorder, and depression not found to
have extraordinary or compelling reason justifying release);
United States v. German, 2020 DNH 172, 2020 WL 5849530, at *2
(D.N.H. Oct. 1, 2020) (finding no extraordinary or compelling
reason where overwise healthy defendant had BMI of thirty-six);
United States v. Malone, No. 3:18cr65, 2020 WL 3026467, at *3

---

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/people-with-medical-conditions.html (last visited
May 20, 2021).

[3] *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-
extra-precautions/older-adults.html(last visited May 20, 2021).

(D. Conn. June 4, 2020) (finding no extraordinary or compelling reason where 50-year-old defendant was overweight with high cholesterol and family history of heart disease).

I, therefore, find that that Farah's age and medical condition do not justify a finding of an extraordinary or compelling reason.  Fortunately, the current risk of contracting the virus at the institution where Farah is incarcerated is low. The BOP has a mitigation plan in place that appears largely successful in controlling the spread of the virus at FCI Loretto, given that there are currently only four confirmed cases of active COVID-19 at the facility.[4]

Last, Farah raises the issue of his elderly father, who has a history of strokes and who broke his neck in April 2020, requesting that he be released to serve as his father's caretaker.  See Doc. No. 79 at 14-15.  He supplied me with supplemental materials detailing both his father's and mother's recent medical conditions.  See Doc. No. 81.  However, as Farah acknowledged at the motion hearing, Farah's mother, despite her

---

[4] I acknowledge that confirmed cases are different from the number of actual cases.  See United States v. Amarrah, 458 F. Supp. 3d 611, 618 (E.D. Mich. 2020) ("Zero confirmed COVID-19 cases is not the same thing as zero COVID-19 cases. The Bureau of Prisons recently discovered this when it found that 70 percent of the inmates it tested were positive for the disease.").  However, Farah does not challenge this statistic and has presented no evidence that this number substantially under-reports the actual number of cases in the facility.

age and smaller stature, is currently in relatively good health
and can provide care for his father.  Both parents are mobile,
and, although his father requires a walker, his mother can drive
his father to all medical appointments.  Farah's brother lives
within an hour of his parents and can provide additional, albeit
limited, support.  As counsel noted at the hearing, if further
issues arise with his father's health, his father may also
qualify for care through Veterans Affairs.

     "While surely many inmates share the plight of having an
incapacitated [family member] at home, the Sentencing Commission
has made clear that courts ought consider that circumstance an
'extraordinary and compelling reason' for compassionate release
only when the defendant is the 'only available caregiver' for
him or her."  United States v. Bucci, 409 F.Supp.3d 1, 2 (D.
Mass. 2019) (citing U.S.S.G. § 1B1.13 n.1(C)(ii)); see United
States v. Irizzary, No. 14-652-13, 2021 WL 735779, at *8 (E.D.
Pa. Feb. 25, 2021) ("[The inmate] fails to demonstrate his other
family members cannot take care of his brother."); United States
v. Newton, 478 F. Supp. 3d 591, 595 (E.D. Mich. 2020) ("[T]he
fact that Defendant's mother suffers from medical hardships,
while unfortunate, does not in and of itself create a compelling
reason to release Defendant.").  Because Farah's father
currently has access to several other able caretakers, including

Farah's mother, I do not find that Farah meets his burden of demonstrating that he is his father's only available caretaker.

I must also consider the sentencing factors under Section 3553(a).  See § 3582(c)(1)(A).  The factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See § 3553(a).  These factors do not support Farah's early release.

There is no doubt that Farah committed serious crimes.  He stole tens of millions of dollars from many victims over the course of over four years.  The harm to his victims' lives is immense.  The sentence I originally imposed reflected the serious nature of Farah's offenses.  Reducing that sentence would not be consistent with the goals of sentencing, including promoting respect for the law, providing just punishment, deterring further criminal conduct, and protecting the public.  Accordingly, I conclude that the interests of justice would not be served if his sentence were reduced.

I recognize that Farah has made significant efforts to rehabilitate himself during his incarceration.  His conduct in prison has been commendable, and Farah remains free to file a

renewed motion in the event of a change of circumstances, in the risk to his health or his family's health.  At present, however, his efforts do not alter the fact that his sentence remains no greater than necessary to achieve the purposes of the sentencing statute.  Consideration of Section 3553(a)'s factors, therefore, weighs against granting any reduction in Farah's sentence.

## IV.  **CONCLUSION**

For the foregoing reasons, Farah's motion for compassionate release (Doc. No. 79) is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

May 24, 2021

cc:  Sandra F. Bloomenthal, Esq.
     Kristin N. Weberg, Esq.
     Mark S. Zuckerman, Esq.
     U.S. Marshal
     U.S. Probation